(161 App. Div. 25)

### PEOPLE ex rel. FROST et al. v. WOODBURY et al.

(Supreme Court, Appellate Division, Third Department.  March 4, 1914.)

TAXATION (§ 598*)—MORTGAGE RECORDING TAX—PAYMENT UNDER PROTEST—EXPENSES OF DEFENDING.

Laws 1906, c. 532, imposing a recording tax of one-half per cent. on the filing of a real estate mortgage, being a revenue measure for the state, and not a county law, the recording officer in each county being merely made use of to collect it, and Tax Law (Consol. Laws, c. 60) § 262, providing he shall be entitled to receive all his necessary expenses for the purposes of this article (Tax on Mortgages) being first approved and allowed by the State Board of Tax Commissioners, to be retained by him out of the moneys coming into his hands, the claim of the county attorney's firm for defending an action brought against the recording officer to recover such a tax, paid him under protest, should be allowed as an expense of the performance of the collector's duty; he having turned over the papers in the action to the county attorney, and his firm having called the attention of the Attorney General to the matter, and with the latter's knowledge and consent defended the action.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1220; Dec. Dig. § 598.*]

Kellogg, J., dissenting.

Certiorari on the relation of J. Sheldon Frost and others against Egburt E. Woodbury and others, composing the State Board of Tax Commissioners, and Thomas Carmody, Attorney General of the State, to review a determination on the claim of relators. Determination annulled, and claim allowed.

Certiorari issued out of the Supreme Court, and attested on the 26th day of June, 1911, directed to Egburt E. Woodbury and others, composing the State Board of Tax Commissioners, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in relation to the disallowance of the claim of the relators for professional services rendered in defense of an action brought in the Supreme Court by the Hygienic Ice & Refrigerating Company against John Franey, as clerk of the county of Albany, for the recovery of a portion of the moneys paid by said company as a tax on a certain trust mortgage claimed by it to be in part a supplemental mortgage within the meaning of the Tax Law, and also directed to the Attorney General of the state of New York commanding him to certify and return likewise all letters, writings, and memoranda relating to such claim.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Frost, Daring & Warner, of Albany (J. S. Frost, of Albany, of counsel), for relators.

Thomas Carmody, Atty. Gen. (August Merrill, Deputy Atty. Gen., of counsel), for respondents.

WOODWARD, J. On the 8th day of February, 1909, a mortgage of the Hygienic Ice & Refrigerating Company was presented to the clerk of Albany county for recording. The corporation claimed an exemption from a portion of the mortgage tax, which claim the county clerk refused to recognize, and the full amount of the tax was paid and the mortgage duly recorded, though the sum of $540 was paid under protest. On the 20th day of February, 1909, the mortgagor filed with the State Board of Tax Commissioners a petition to review the action of the county clerk, and while such proceeding was pending undetermined, and on the 23d day of February, an action was brought in the Supreme Court by said mortgagor against John Franey, as clerk of the county of Albany, as sole defendant, to recover the amount so paid under protest and asking that the defendant be restrained during the pendency of the action from paying over or distributing the said $540. Luther C. Warner was at the time county attorney of Albany county, and the summons and complaint, with other moving papers, were delivered to him by John Franey, evidently upon the theory that the duty belonged to him to defend the action, and Mr. Warner's firm of Frost, Daring & Warner appeared in the action and successfully defended the same. They subsequently submitted a bill for services to the clerk of Albany county, who in turn referred it to the State Board of Tax Commissioners for their approval and allowance, and this body, upon the opinion of the Attorney General, disallowed the claim, and the matter is brought here by a writ of certiorari for review.

The learned Attorney General, in his return to the writ, denied that he had any notice of the appearance of the relators in the action mentioned until the 11th day of May, 1910, and that the relators' letter of March 8, 1909, informing him that the appearance was not made by Mr. Warner, as county attorney, was never received by his office, but upon the hearing it was stipulated that such letter was received, so that it appears that the Attorney General, whose duty it would probably have been to take care of the action out of which this claim arose, had notice early in the litigation of the fact that Mr. Warner did not appear in the case as county attorney, and that the litigation was being conducted by the relators.

The Mortgage Tax Law of 1905 (chapter 729) was strictly a revenue measure, providing for an annual tax of one-half of 1 per cent.; and, while the law was remodeled by chapter 532 of the Laws of 1906 and made merely a recording tax of one-half of 1 per cent. upon the filing of the mortgage, it has not changed in its essential aspect of a revenue measure for the state, with incidental concessions to the localities from whence the tax is collected for the purpose of meeting the local taxes or expenses. The statute is not, however, in any sense a county law; it merely makes use of the recording officer in each of the counties to

collect the revenue; and, sensible of its general character and of the impropriety of imposing any burden upon the counties as such, the Legislature in the original statute (chapter 729, Laws of 1905) provided that:

"Recording officers and county treasurers and the chamberlain of the city of New York, shall severally be entitled to receive, all their necessary expenses for the purposes of this act, including printing, advertising, costs of lists, hire of clerks and assistants, being first approved and allowed by the State Board of Tax Commissioners, which shall be retained by them out of the moneys coming into their hands." Section 311.

And this language is substantially the same in section 262 of the Tax Law as it exists to-day. The county clerk, in collecting the recording tax, is not acting for the county; he is the agent of the state. His duties as county clerk require him to record mortgages upon property within the county, but the state, for the purposes of a revenue, forbids that he shall discharge this duty until the mortgagor has paid a certain fee, and the statute provides that, in the discharge of this obligation to the state, he shall be "entitled to receive all" his "necessary expenses for the purposes of this article, including printing, hire of clerks and assistants." Obviously if John Franey was not acting as county clerk, but as agent of the state, in the transaction out of which the litigation grew, neither the county of Albany, nor its county attorney, had anything to do with the action, and the mere fact that John Franey thought this a proper matter to turn over to the county attorney did not in the least change the legal status of Mr. Warner: neither he nor his firm of lawyers was under any obligations to perform this service gratuitously for John Franey as the collecting agent of the state's tax upon the recording of a mortgage, for the statute itself had provided that in this capacity he was entitled to "receive all" his necessary expenses. He was bound to collect the tax prescribed by the state, and, if in doing this he was put to the expense of defending an action, it was not in connection with any matter pertaining to the county of Albany, and the latter could not be put to any expense in the matter, even to the extent of furnishing an attorney who was already receiving a salary for the duties prescribed by the conditions of his employment and which related strictly to the affairs of the county of Albany. See Resolution of Appointment, and section 210 of the County Law (Consol. Laws, c. 11).

Assuming that it was the duty of the Attorney General generally to look after a matter of this character, the action was brought against "John Franey, as clerk of the county of Albany," which would not suggest such a duty upon the part of the Attorney General upon its face, and, as soon as the real character of the action developed, the relators concededly called the attention of that officer to the matter, and the litigation appears to have been carried forward to a successful issue with the knowledge and consent of the Attorney General. The latter might have employed the relators originally for this purpose, and it would be rather technical, and inconsistent with the dignity of a great state, to hold that services performed in good faith, and resulting in advantage to the state, carried on with the full knowledge of the Attorney General, could not be compensated out of a fund

charged by the statute with "all * * * necessary expenses for the purposes of this article." As the record now stands, with the concession that the Attorney General had notice of the real facts immediately after the relators appeared in the case, and that the litigation was permitted to go forward with no objection on the part of any one, we are of the opinion that the relators have shown a right to be compensated out of the fund; that the defense of this litigation was one of the "necessary expenses for the purposes of this article"; and that John Franey might have employed other attorneys and properly charged the fund with such expense, and the situation is not changed, in so far as the rights of the relators are concerned, because he thought it was within the scope of the duties of Mr. Warner as county attorney. Mr. Warner never appeared as county attorney; the Attorney General had notice at the outset that he did not appear in any official capacity; and the rights of the relators cannot be prejudiced by what John Franey did not know of the duties and obligations of Mr. Warner.

Whatever we might think of the question as presented by the original record, as modified by the stipulation of the Attorney General, we are persuaded that the determination of the State Board of Tax Commissioners is not warranted, and that it should be overruled, and the claim of the relators should be allowed as a proper and necessary expense of performing his duties as collector of the recording tax in the matter in question.

The determination is annulled, and the claim of the relators allowed.

Determination annulled on law and facts, and the claim of relators allowed, with $50 costs and disbursements. All concur, except KELLOGG, J., who dissents.